1
2
3
4
5
6
7

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

8
9
10

UNITED STATES OF AMERICA,

NO.    CV24-1890

11

Plaintiff,

12

v.

**VERIFIED COMPLAINT
FOR FORFEITURE *IN REM***

13
14

REAL PROPERTY KNOWN AS 10801 NW
43RD STREET, TERREBONNE,
OREGON, 97760, Together with all
Appurtenances, Fixtures, Attachments, and
Improvements, Thereto and Thereupon;

15
16
17

$22,556.62 in United States funds seized
from Wells Fargo Bank account ending
-4181;

18
19
20

$24,291.17 in United States funds seized
from Wells Fargo Bank account ending
-6896;

21
22
23

$8,976.37 in United States funds seized from
a Wells Fargo Bank account ending -7318;
and

24
25

$3,600.00 in United States funds paid to
United States Marshals Service,

26

Defendants.

27

1    COMES NOW the United States, by and through its undersigned counsel, and

2  alleges:

3                    **I.    NATURE OF THE ACTION**

4    1.    This is a civil action *in rem*, brought to enforce the provisions of 18 U.S.C.

5  § 981(a)(1)(C) for forfeiture of property which constitutes or is derived from proceeds

6  traceable to a violation of 18 U.S.C. § 1343; and 18 U.S.C. § 981(a)(1)(A) for forfeiture

7  of property involved in one or more transactions or attempted transactions in violation of

8  18 U.S.C. §§ 1956(a)(1)(B)(i), 1956(h), and 1957, and property traceable to property

9  involved in one or more such transactions.

10    2.    The United States brings this civil *in rem* forfeiture action following the

11  dismissal of a related criminal case, *United States v. Stephen Alexander Baird*, CR23-

12  017-RAJ (the "Related Criminal Case"), upon the death of the defendant in that case,

13  Stephen Alexander Baird.

14                **II.    PLAINTIFF AND DEFENDANT *IN REM***

15    3.    The plaintiff is the United States of America (the "Plaintiff" or

16  "Government" or "United States").

17    4.    The defendant property includes the following property (collectively, the

18  "Defendant Property"):

19            a.    the real property known as 10801 Northwest 43rd Street,

20  Terrebonne, Oregon, 97760, Deschutes County, Map/Taxlot No. 1412000000300, Tax

21  Account No. 127572, titled in the name of Island Family Limited Partnership, together

22  with its buildings, improvements, appurtenances, fixtures, attachments, and easements

23  ("Terrebonne Property") and legally described as follows:

24                In Township Fourteen (14) South, Range Twelve (12), East of
                  the Willamette Meridian, Deschutes County, Oregon:
25

26                Section Twelve (12): The East Half of the Northeast Quarter
                  (E1/2 NE1/4).
27

Verified Complaint for Forfeiture *in Rem* - 2
*United States v. 10801 NW 43rd St., et al.*

1    b.    $22,556.62 in United States funds seized on or about March 28,

2    2023, from Wells Fargo Bank account ending -6896 ("Defendant Funds 1");

3    c.    $24,291.17 in United States funds seized on or about March 28,

4    2023, from Wells Fargo Bank account ending -7318 ("Defendant Funds 2");

5    d.    $8,976.37 in United States funds seized on or about March 28, 2023,

6    from Wells Fargo Bank account ending -4181 ("Defendant Funds 3"); and

7    e.    $3,600.00 in United States funds paid in or about April 2023 to the

8    United States Marshals Service pursuant to the Restraining Order issued in the related

9    criminal case, *United States v. Stephen Alexander Baird*, 23-cr-00017-RAJ ("Defendant

10    Funds 4").

11    ## III.    JURISDICTION AND VENUE

12    5.    This Court has jurisdiction over an action commenced by the United States

13    under 28 U.S.C. § 1345 and has jurisdiction over an action for forfeiture under

14    28 U.S.C. § 1355(a).

15    6.    This Court has *in rem* jurisdiction over the Defendant Property under

16    28 U.S.C. § 1355(b).

17    7.    Venue is proper in this district pursuant to 28 U.S.C. § 1355(b)(1)(A)

18    because the acts or omissions giving rise to the forfeiture occurred in this district.

19    8.    Pursuant to 18 U.S.C. § 985(a) and Supplemental Rule ("Supp. R.") G(3)(a)

20    of the Federal Rules of Civil Procedure ("Fed. R. Civ. P."), all civil forfeitures of real

21    property and interests in real property shall proceed as judicial forfeitures.

22    9.    Pursuant to 18 U.S.C. § 981(f), all right, title, and interest in the

23    Defendant Property vests in the United States at the time of the acts giving rise to the

24    forfeiture.

25    10.    Pursuant to Supplemental Rule G(2)(f), facts in support of a reasonable

26    belief that the United States will be able to meet its burden of proof at trial are as follows

27

Verified Complaint for Forfeiture *in Rem* - 3
*United States v. 10801 NW 43rd St., et al.*

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1 | and have been verified by the attached Verification of Federal Bureau of Investigation

2 | (FBI), Special Agent (SA) Catherine Allaway.

3 | **VI.    APPLICABLE LAW**

4 | 11.    Pursuant to 18 U.S.C. § 1343, it is unlawful to transmit "by means of wire

5 | . . . in interstate or foreign commerce" and "writings, signs, signals, pictures, or sounds"

6 | for the "purpose of executing" a "scheme or artifice . . . for obtaining money or property

7 | by means of false or fraudulent pretenses, representations, or promises . . ."

8 | 12.    Pursuant to 18 U.S.C. § 1956(a)(1)(B)(i), it is unlawful "knowing that the

9 | property involved in a financial transaction represents the proceeds of some form of

10 | unlawful activity, [to] conduct[] or attempt[] to conduct such a financial transaction

11 | which in fact involves the proceeds of specified unlawful activity . . . with the intent to

12 | promote the carrying on of specified unlawful activity; or . . . knowing that the

13 | transaction is designed in whole or in part . . . to conceal or disguise the nature, the

14 | location, the source, the ownership, or the control of the proceeds of specified unlawful

15 | activity . . . ."

16 | 13.    Pursuant to 18 U.S.C. § 1957, it is unlawful for any person to "knowingly

17 | engage[] or attempt[] to engage in a monetary transaction in criminally derived property

18 | of a value greater than $10,000 and is derived from specified unlawful activity . . . ."

19 | 14.    Pursuant to 18 U.S.C. § 1956(h), it is unlawful for any person to

20 | "conspire[] to commit any offense defined in [sections 1956 or 1957] . . . ."

21 | 15.    Pursuant to 18 U.S.C. §§ 1956(c)(7) and 1961(1)(B), the offense of wire

22 | fraud, in violation of 18 U.S.C. § 1343, constitutes "specified unlawful activity" within

23 | the meaning of 18 U.S.C. §§ 1956(a)(1)(B)(i) and 1957.

24 | 16.    Pursuant to 18 U.S.C. § 981(a)(1)(A), "[a]ny property, real or personal,

25 | involved in a transaction or attempted transaction in violation of [18 U.S.C. §§ 1956 or

26 | 1957], or any property traceable to such property" is subject to civil forfeiture to the

27 | United States.

Verified Complaint for Forfeiture *in Rem* - 4
*United States v. 10801 NW 43rd St., et al.*

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

17.    Pursuant to 18 U.S.C. § 981(a)(1)(C), "[a]ny property, real or personal, which constitutes or is derived from proceeds traceable to a violation of [18 U.S.C. § 1343]" is subject to civil forfeiture to the United States.

18.    Pursuant to 18 U.S.C. § 985, "all civil forfeitures of real property and interests in real property shall proceed as judicial forfeitures."

## VII.    FACTS

### A.    Procedural History of Related Criminal Case

19.    On February 9, 2023, in the Related Criminal Case, a grand jury in the Western District of Washington returned an indictment charging Baird with ten counts of wire fraud, arising out of Baird's scheme to defraud investors in connection with his promotion and sale of stock in S-Ray, a company formed by Baird ostensibly for the purpose of developing dental devices that use ultrasound technology. *United States v. Stephen Alexander Baird*, CR23-017-RAJ, Dkt. No. 3 (Indictment); Dkt. No. 52 ¶ 8 (Plea Agreement).

20.    On February 17, 2023, the United States filed, in the Related Criminal Case, a forfeiture bill of particulars providing notice to Baird that the United States intended to seek forfeiture of the Terrebonne Property as proceeds of the wire-fraud scheme alleged in the Indictment. *United States v. Baird*, CR23-017-RAJ, Dkt. No. 17. The United States filed a notice of *lis pendens* contemporaneously with the forfeiture bill of particulars. *United States v. Baird*, CR23-017-RAJ, Dkt. No. 18.

21.    On March 28, 2023, United States Magistrate Judge for the Western District of Washington Paula L. McCandlis issued three forfeiture seizure warrants, 23-MC-00025-PLM, authorizing the seizure, for forfeiture, of all funds in the three Wells Fargo accounts associated with IFLP and Murdock-Baird. The United States executed the warrants on or about March 28, 2023, and seized Defendant Funds 1–3, which represented what remained of funds paid by the Former Buyers of the Terrebonne Property pursuant to a real estate sales agreement ("RESA").

Verified Complaint for Forfeiture *in Rem* - 5
*United States v. 10801 NW 43rd St., et al.*

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

22.     On March 30, 2023, the United States filed, in the Related Criminal Case, a motion for restraining order, asking the Court to restrain for forfeiture any pending and future payments relating to or arising out of the sale of the Terrebonne Property. *United States v. Baird*, CR23-017-RAJ, Dkt. No 24. The Court granted the United States' motion and entered the requested restraining order ("Restraining Order") on April 6, 2023. *United States v. Baird*, CR23-017-RAJ, Dkt. No. 32.

23.     In or about April 2023, the Former Buyers of the Terrebonne Property made a rental payment to the United States Marshals Service ("USMS") pursuant to the Restraining Order. Defendant Funds 4 comprise that one-time rental payment.

24.     On May 8, 2024, Baird pled guilty to wire fraud, in violation of 18 U.S.C. § 1343, as charged in Count 6 of the Indictment in the Related Criminal Case. *United States v. Baird*, CR23-017-RAJ, Dkt. No. 52. In his Plea Agreement, Baird admitted facts establishing the wire-fraud scheme described herein.

25.     Also in his Plea Agreement, Baird agreed to forfeit his interest in "any and all property that constitutes or is derived from proceeds [Baird] obtained from his commission of the wire-fraud scheme" charged in Count 6 including, but not limited to, "any specific property that the Court determines constitutes or derives from proceeds of the wire-fraud scheme." *United States v. Baird*, CR23-017-RAJ, Dkt. No. 52 ¶ 13.

26.     On October 11, 2024, the United States filed, in the Related Criminal Case, an unopposed motion for preliminary order of forfeiture forfeiting, to the United States, Baird's interest in the Defendant Property. *United States v. Baird*, CR23-017-RAJ, Dkt. No. 63.

27.     On October 24, 2024, the Court entered, in the Related Criminal Case, a preliminary order of forfeiture forfeiting, to the United States, Baird's interest in the Defendant Property. *United States v. Baird*, CR23-017-RAJ, Dkt. No. 75.

28.     On October 25, 2024, Baird failed to appear for his sentencing in the Related Criminal Case. *United States v. Baird*, CR23-017-RAJ, Dkt. No. 76.

Verified Complaint for Forfeiture *in Rem* - 6
*United States v. 10801 NW 43rd St., et al.*

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1   29.   On October 31, 2024, the United States Probation and Pretrial Services for

2 the Western District of Washington filed, in the Related Criminal Case, a Notice of Death

3 regarding Baird. *United States v. Baird*, CR23-017-RAJ, Dkt. No. 81.

4   30.   The Court dismissed the Related Criminal Case on October 31, 2024.

5 *United States v. Baird*, CR23-017-RAJ, Dkt. No. 82.

6 **B.   Background and Overview of Wire-Fraud and Money-Laundering Schemes**

7   31.   The Defendant Property constitutes or is derived from proceeds traceable to

8 one or more wire fraud offenses, in violation of 18 U.S.C. § 1343. The Defendant

9 Property was also involved in, or traceable to property involved in, one or more financial

10 or monetary transactions, or attempted financial or monetary transactions, in violation of

11 18 U.S.C. §§ 1956(a)(1)(B)(i), 1956(h), and 1957, which transactions involved the

12 proceeds of specified unlawful activity as defined in 18 U.S.C. §§ 1956(c)(7) and

13 1961(1)(B), that is, wire fraud, in violation of 18 U.S.C. § 1343. The Defendant Property,

14 therefore, is subject to civil forfeiture pursuant to 18 U.S.C. §§ 981(a)(1)(A) and (C).

15   32.   Stephen Alexander Baird was a resident of Bainbridge Island, Washington

16 and Bend, Oregon. In 2010, Baird founded S-Ray Incorporated ("S-Ray"), a Nevada

17 corporation. In 2015, Baird re-formed S-Ray as a Delaware corporation. At times S-Ray

18 had offices in Seattle and Redmond, Washington, Portland, Oregon, and Huntington

19 Beach, California.

20   33.   Baird has been the sole board member of S-Ray since 2010. He served

21 continuously as either its Chief Executive Officer or "Chairman of the Board"—though

22 the company had no board members other than Baird.

23   34.   Baird also owned and/or controlled two business entities: Island Family

24 Limited Partnership ("IFLP"), which he owned and/or controlled together with his wife,

25 Molly Murdock-Baird; and Lido Asset Management, LLC ("Lido").

26   35.   Baird used S-Ray, IFLP, and Lido as vehicles to defraud investors out of

27 millions of dollars and to funnel S-Ray corporate funds to himself. Baird made numerous

Verified Complaint for Forfeiture *in Rem* - 7
*United States v. 10801 NW 43rd St., et al.*

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1 misrepresentations to induce investors to purchase stock in S-Ray. Baird then diverted
2 millions of dollars of S-Ray's corporate funds to IFLP and Lido, which funds he used to
3 purchase assets for his personal benefit. The investors lost their entire investments.

4     36.    Among the various assets Baird purchased for his personal benefit using
5 investor funds was real property on Bainbridge Island, Washington (the "Bainbridge
6 Property"), which he used as his personal residence. Baird titled the Bainbridge Property
7 in the name of IFLP.

8     37.    Baird, through IFLP, later conducted an Internal Revenue Code (IRC)
9 Section 1031 like-kind exchange of the Bainbridge Property for the Terrebonne Property
10 in a transaction designed, in whole or in part, to conceal and disguise the nature, location,
11 source, ownership, and control of the wire-fraud proceeds involved in the transaction.
12 Baird also titled the Terrebonne Property in the name of IFLP.

13     38.    Baird, through IFLP, eventually contracted to sell the Terrebonne Property
14 to third-party prospective purchasers (the "Former Buyers"). The Former Buyers made
15 several payments to Baird, through IFLP and Murdock-Baird. After living at the
16 Terrebonne Property for more than one year, the Former Buyers backed out of the
17 agreement. Defendant Funds 1–4 represent what remains of the payments the Former
18 Buyers made pursuant to that agreement and therefore also represent proceeds of Baird's
19 wire-fraud scheme and property traceable to his money-laundering scheme.

20 **C.    The Scheme to Defraud**

21     39.    Beginning no later than 2012, and continuing until March 2021, in King
22 County, within the Western District of Washington, and elsewhere, Baird devised and
23 intended to devise a scheme and artifice to defraud and to obtain money and property by
24 means of materially false and fraudulent pretenses, representations, promises, and
25 omitted facts.

26
27

Verified Complaint for Forfeiture *in Rem* - 8
*United States v. 10801 NW 43rd St., et al.*

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1   40.    For the purpose of executing and attempting to execute the scheme and
2 artifice to defraud, Baird knowingly transmitted, and caused to be transmitted, by wire
3 communication in interstate and foreign commerce, numerous signs and signals.

4   41.    The essence of the scheme and artifice to defraud was for Baird to enrich
5 himself by persuading investors to purchase S-Ray stock using misrepresentations, false
6 promises, and omissions about S-Ray's product development and regulatory status, the
7 use of investor funds, and other circumstances material to investors' decisions to invest in
8 S-Ray. Baird then converted most of the investment funds to his own personal use.

9   42.    Baird told prospective investors that S-Ray had developed innovative
10 ultrasound devices that allowed dentists to quickly and safely capture high-quality oral
11 images of their patients' mouths. To entice the investors to buy S-Ray stock, Baird
12 represented that S-Ray's devices produced "astonishing results"; that S-Ray was
13 perpetually on the cusp of offering the devices for sale; that S-Ray had obtained FDA
14 "market clearance" authorizing the company to sell the device; and that the S-Ray
15 technology was protected by the company's broad and valuable array of intellectual
16 property rights.

17   43.    For example, in an April 24, 2012, email to investors, Baird stated that the
18 company's product was "defined," and that S-Ray planned a "limited release" of the
19 product in July 2013. Baird stated that the company would sell approximately 30 systems
20 per month for $7,500 each.

21   44.    In December 2014, at Baird's direction, an S-Ray employee announced to
22 shareholders that S-Ray would be releasing Clearview LAB into the market in "the first
23 quarter of 2015," which "will bring revenue to the company."

24   45.    In February 2015, S-Ray announced that the company was "on the cusp of
25 releasing our first product."

26   46.    None of these things were true. Contrary to these—and many other—
27 representations, and as Baird well knew, S-Ray had not, at any time during this period,

Verified Complaint for Forfeiture *in Rem* - 9
*United States v. 10801 NW 43rd St., et al.*

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  developed any functional prototype or product useful for any dental application, and was
2  nowhere near releasing any product into the market or generating revenue.

3      47.    Baird also told investors that investment proceeds would be used only for
4  corporate purposes. For example, in a May 2015 email to shareholders, S-Ray
5  represented that investment proceeds would be used to obtain market clearance for its
6  product, to finance production and sales, and to complete preparations for a public
7  offering. Baird made similar representations in 2017 and again in 2019. In fact, Baird
8  used a large share of the investment proceeds for his own purposes.

9      48.    Baird continued to make misrepresentations, and to solicit investments in
10 S-Ray, through March 2021, long after S-Ray had suspended all operations. And, Baird
11 continued to divert those corporate investments to himself and his family members.

12      49.    In all, investors paid at least $10.75 million to purchase S-Ray stock
13 between May 2012 and March 2021. Baird used only approximately $4 million of these
14 proceeds for S-Ray business purposes. Baird used for his own purposes, or transferred to
15 affiliate companies or family members, the remaining $6.7 million, or 62% of the
16 investment proceeds. By December 31, 2021, approximately $13,000 remained in S-
17 Ray's corporate account, with S-Ray having never developed a usable device.

18 **D.    The Money-Laundering Scheme**

19      50.    Baird regularly diverted to himself investors' funds, which represented
20 proceeds of his wire-fraud scheme, for the benefit of himself and his family, in
21 transactions and series of transactions designed, in whole or in part, to conceal and
22 disguise the nature, location, source, ownership, and control of the proceeds.

23      51.    For example, in December 2014, Baird wrote a check for $100,000 to Lido.
24 Baird wrote on the memo line of the check that the funds were for "lab equipment."
25 However, eight days later, Baird used a portion of those funds to purchase a luxury car.
26 None of the funds were used to purchase lab equipment or for other corporate expenses.
27

Verified Complaint for Forfeiture *in Rem* - 10
*United States v. 10801 NW 43rd St., et al.*

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

52.    Similarly, between April and July 2015, Baird transferred a total of $1.7 million in S-Ray funds to IFLP. Baird used approximately $1.65 million of this money to buy a personal residence on Bainbridge Island, as discussed in more detail below.

53.    Baird's use of Lido and IFLP as recipients of S-Ray funds was designed, in whole or in part, to conceal and disguise the nature, location, source, ownership, and control of the wire-fraud proceeds.

i.    **Baird transferred wire-fraud proceeds from S-Ray to IFLP**

54.    Baird specifically conducted, or caused to be conducted, the following transactions involving wire-fraud proceeds from, to, and through financial accounts he owned and/or controlled as an authorized signer:

a.    On or about April 20, 2015, a $100,000.00 check (#2020) issued from Bank of America, N.A, ("BofA") account ending -3634, held in the name of S-Ray, was deposited in JPMorgan Chase & Company ("Chase") account ending -2125, held in the name of IFLP. During the preceding 12 months, all deposits to S-Ray BofA account -3634 (totaling more than $848,000.00) were proceeds from investors.

b.    On or about June 17, 2015, a $50,000.00 check (#1247) issued from Kitsap Bank account ending -2311, held in the name of S-Ray, was deposited in ILFP Chase account -2125. During the preceding 12 months, deposits to S-Ray Kitsap Bank account -2311 totaled more than $364,000.00, of which all but $50,000.00 were investor deposits. The remaining $50,000.00 was transferred from S-Ray BofA account -3634.

c.    On or about June 18, 2015, a $300,000.00 check (#2042) issued from S-Ray BofA account -3634 was deposited in IFLP Chase account -2125. From April 20, 2015, through June 18, 2015, investor deposits totaling $79,550.00 were received in S-Ray BofA account -3634.

d.    On or about July 13, 2015, a $300,000.00 check (#993) issued from BofA account ending -3169, held in the name of S-Ray, was deposited in IFLP Chase account -2125. S-Ray BofA account -3169 was opened on June 19, 2015, and was funded

Verified Complaint for Forfeiture *in Rem* - 11
*United States v. 10801 NW 43rd St., et al.*

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1 | by transfers from S Ray BofA account -3634 totaling $91,483.12, as well as by additional

2 | investor proceeds totaling $324,475.00. Baird deposited one personal check in the

3 | amount of $4,629.25 in this account; however, the funds from his personal account derive

4 | from S-Ray Kitsap Bank account -2311, which was funded by investor deposits.

5 |      e.     On or about July 24, 2015, a $950,000.00 wire from S-Ray BofA

6 | account -3169 posted to IFLP Chase account -2125. From July 13, 2015, through July 24,

7 | 2015, all funds deposited in S-Ray BofA account -3169 (totaling $1,305,191.00) were

8 | proceeds from investors.

9 | **ii.**     **IFLP used wire-fraud proceeds to purchase real property**

10 | 55.     Also on or about July 24, 2015, Baird, through IFLP, wired $1,645,335.22

11 | to Winslow Law Group, PLLC (Winslow). Baird, through IFLP, made an additional

12 | payment of $50,000 to Winslow by check, which cleared on or about June 17, 2015. The

13 | total of these two payments is $1,695,335.22.

14 | 56.     The real property located at 14739 Henderson Road N, Bainbridge Island,

15 | Washington, 98110 (Bainbridge Property) was purchased and sold for $1,695,000 on July

16 | 24, 2015.

17 | 57.     Baird titled the Bainbridge Property in the name of IFLP, in whole or in

18 | part, to conceal and disguise the nature, location, source, ownership, and control of the

19 | wire-fraud proceeds used to purchase the property.

20 | 58.     Baird used the Bainbridge Property as his personal residence from July

21 | 2015 through June 2019.

22 | **iii.**     **IFLP conducted a like-kind exchange under IRC Section 1031**

23 | 59.     On or about April 18, 2019, Baird, through IFLP, entered into an agreement

24 | to purchase the real property located at 10801 NW 43rd Street, Terrebonne, Oregon,

25 | 97760 (Terrebonne Property), for $1,450,000.

26 | 60.     On or before April 16, 2019, Baird retained Equity Advantage,

27 | Incorporated ("Equity Advantage") to facilitate a like-kind exchange of real property

Verified Complaint for Forfeiture *in Rem* - 12
*United States v. 10801 NW 43rd St., et al.*

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

under IRC section 1031. According to Internal Revenue Service ("IRS") fact sheet FS-2008-18, "IRC Section 1031 provides an exception [to tax on the gain of real property] and allows [exchangers] to postpone paying tax on the gain if [the exchangers] reinvest the proceeds in similar property as part of a qualifying like-kind exchange."

61.    To facilitate the 1031 exchange, Equity Advantage formed Advantage Equities 12601, LLC ("12601") on or about June 3, 2019. According to the Operating Agreement of Advantage Equities 12601, LLC, the purpose of the entity was "to hold property to facilitate a Section 1031 tax-free exchange . . . ." Equity Advantage's and 12601's records identified the Bainbridge Property as the "relinquished property" and the Terrebonne Property as the "Replacement Property," the latter of which 12601 held on behalf of Baird and IFLP until the 1031 exchange was complete.

62.    The Bainbridge Property sold on or about June 17, 2019, for $1,780,000.

63.    The Terrebonne Property sold on or about June 18, 2019, for $1,450,000.

64.    On or about June 17, 2019, Equity Advantage received a wire transfer of $150,130.98, representing the balance of the proceeds from the sale of the Bainbridge Property after application of the proceeds towards the purchase of the Terrebonne Property.

65.    Baird, on behalf of IFLP, explained to Equity Advantage in a letter dated July 30, 2019: "Because the replacement property was purchased for less than the proceeds from the sale of Bainbridge Island property and we do not want to receive those proceeds in cash, we are in the process of selecting contractors for improvements to the replacement property."

66.    From on or about July 30, 2019, through December 13, 2019, Baird, on behalf of IFLP, directed Equity Advantage to use the balance of the Bainbridge Property sale proceeds toward various improvements to the Terrebonne Property.

67.    On or about December 13, 2019, 12601 quitclaim deeded the Terrebonne Property to IFLP.

Verified Complaint for Forfeiture *in Rem* - 13
*United States v. 10801 NW 43rd St., et al.*

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

68.    Baird titled the Terrebonne Property in the name of IFLP and conducted, or caused to be conducted, the IRC Section 1031 like-kind exchange, in whole or in part, to conceal and disguise the nature, location, source, ownership, and control of the wire-fraud proceeds used to purchase the Terrebonne Property.

**iv.    Baird Contracted to Sell the Terrebonne Property**

69.    On or about October 25, 2022, Baird, through IFLP, entered into an agreement (RESA) with the Former Buyers for the purchase and sale of the Terrebonne Property for the total sale price of $2,000,000. The RESA provided that the Former Buyers would make payments of earnest money to IFLP in the amounts of $20,000 and $50,000. At closing, the Former Buyers would pay IFLP $600,000. The balance of the sale price, $1,330,000, was to be financed through IFLP. The Former Buyers' monthly installments would be "interest-only on principal balance owed, at 6.25% interest calculated on a 365-day year, payable in monthly installments of 1/12th of the annual interest calculation." The "initial full monthly interest payment amount" was set at $6,927.08.

70.    The RESA further provided that, beginning January 1, 2023, and continuing until closing, the Former Buyers would pay IFLP monthly rent of $3,000.

71.    The parties used Western Title & Escrow Company ("Western Title") to facilitate the purchase and sale of the Terrebonne Property.

72.    Upon information and belief, the Former Buyers possessed the Terrebonne Property beginning in or around January 2023.

73.    Upon information and belief, in or before April 2024, the RESA terminated, and the Former Buyers vacated the Terrebonne Property.

74.    Funds arising out of and/or related to the sale of the Terrebonne Property, totaling $86,695, were deposited in accounts at Wells Fargo Bank, N.A. ("Wells Fargo"), held in the names of IFLP and Murdock-Baird. Funds were transferred between and among those accounts, at least in part, with the design to conceal and disguise the nature,

Verified Complaint for Forfeiture *in Rem* - 14
*United States v. 10801 NW 43rd St., et al.*

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  location, source, ownership, and control of those funds. Defendant Funds 1–3 comprise
2  the remaining balances of those accounts.

3      75.    Defendant Funds 4 comprise a single rent payment made by the Former
4  Buyers to USMS pursuant to a restraining order entered in the Related Criminal Case.

5          **a.    IFLP Wells Fargo account -4181**

6      76.    On or about November 28, 2022, Wells Fargo account ending -4181, held
7  in the name of IFLP, had a balance of $25.

8      77.    On or about November 29, 2022, IFLP Wells Fargo account -4181 received
9  a check from Western Title in the amount of $20,000. On or about December 12, 2022,
10 IFLP Wells Fargo account -4181 received a check from Western Title in the amount of
11 $50,000. These two payments represent the two earnest money deposits made by the
12 Former Buyers pursuant to the RESA.

13     78.    IFLP Wells Fargo account -4181 received interest payments totaling $1.02.

14     79.    IFLP Wells Fargo account -4181 received no other deposits.

15     80.    On or about December 6, 2022, $6,000 was wired from IFLP Wells Fargo
16 account -4181 to Wells Fargo account ending -6896, held in the name of Murdock-Baird.

17     81.    On or about December 13 and 14, 2022, two wires totaling $55,000 were
18 sent from IFLP Wells Fargo account -4181 to Wells Fargo account ending -7318, held in
19 the name of Murdock-Baird.

20     45.    The balance of IFLP Wells Fargo account -4181, as of January 31, 2023,
21 was $9,026.02.

22         **b.    Murdock-Baird Wells Fargo account -6896**

23     82.    On or about December 6, 2022, Murdock-Baird Wells Fargo account -6896
24 had a balance of $3,538.32.

25     83.    As set forth above, on or about December 6, 2022, Murdock-Baird Wells
26 Fargo account -6896 received a wire from IFLP Wells Fargo account -4181 in the amount
27 of $6,000.

Verified Complaint for Forfeiture *in Rem* - 15
*United States v. 10801 NW 43rd St., et al.*

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

84.     From on or about December 15, 2022, through January 31, 2023, Murdock-Baird Wells Fargo account -6896 received three wires from Murdock-Baird Wells Fargo account -7318, totaling $10,000.

85.     On or about February 8, 2023, Murdock-Baird Wells Fargo account -6896 received deposits of two checks from the Former Buyers totaling $16,695. Upon information and belief, these checks represented some combination of monthly installments due and owing to ILFP under the RESA.

86.     The balance of Murdock-Baird Wells Fargo account -6896 as of February 21, 2023, was $3,780.98, most of which was directly traceable to the sale of the Terrebonne Property.

        **c.     Murdock-Baird Wells Fargo account -7318**

87.     On or about December 1, 2022, Murdock-Baird Wells Fargo account -7318 had a balance of $264.27.

88.     As set forth above, Murdock-Baird Wells Fargo account -7318 received two wires totaling $55,000 from IFLP Wells Fargo account -4181 on December 13 and 14, 2022.

89.     As set forth above, Murdock-Baird Wells Fargo account -7318 sent three wires totaling $10,000 to Murdock-Baird Wells Fargo account -6896 from on or about December 15, 2022, through January 31, 2023.

90.     On or about February 9, 2023, Murdock-Baird Wells Fargo account -7318 received a wire from Murdock-Baird Wells Fargo account -6896 in the amount of $4,000.

91.     Murdock-Baird Wells Fargo account -7318 received interest payments totaling $17.36.

92.     Murdock-Baird Wells Fargo account -7318 received no other deposits.

93.     The balance of Murdock-Baird Wells Fargo account -7318 as of February 9, 2023, was $49,281.63.

1  94.    The foregoing transactions were designed, at least in part, to conceal and

2  disguise the nature, location, source, ownership, and control of the proceeds of the sale of

3  the Terrebonne Property, which constituted or derived from proceeds traceable to Baird's

4  wire-fraud scheme.

5  **E.    The Terrebonne Property and Defendant Funds Are Forfeitable**

6  95.    Proceeds of unlawful activity remain proceeds subject to forfeiture

7  regardless of the extent to which and frequency with which the proceeds change form.

8  Accordingly, the Terrebonne Property, and funds arising out of and/or related to its

9  purchase and sale, constitute or derive from proceeds traceable to Baird's wire-fraud

10  scheme, even if the proceeds changed forms multiple times through transfers among

11  accounts and through the purchase and sale of multiple properties.

12  96.    Any gains realized on proceeds of unlawful activity are also considered

13  proceeds. Accordingly, any gains Baird realized in the increased value of the Terrebonne

14  Property from its purchase using wire-fraud proceeds through the present, including any

15  payments received from the Former Buyers under the RESA, constitute and/or derive

16  from proceeds traceable to Baird's wire-fraud scheme because the purchase of the

17  Terrebonne Property is traceable to such unlawful proceeds.

18  97.    Additionally, property that is not directly traceable to specified unlawful

19  activity is nonetheless forfeitable if it is involved in one or more money-laundering

20  transactions. Accordingly, any of the Defendant Funds not directly traceable to Baird's

21  wire-fraud scheme are still forfeitable if they were involved in one or more money-

22  laundering transactions. This includes, but is not limited to, any funds in any of the three

23  Wells Fargo accounts described above that were present in such account at the time a

24  money-laundering transaction occurred using that account, such as, for example, the

25  deposit of wire-fraud proceeds in, or the transfer of wire-fraud proceeds to, the account.

26  98.    Based on the foregoing facts and transactions, the Defendant Property

27  constitutes or derives from proceeds traceable to one or more wire-fraud offenses, and

Verified Complaint for Forfeiture *in Rem* - 17
*United States v. 10801 NW 43rd St., et al.*

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1 | was involved in, or is traceable to property involved in, one or more money-laundering

2 | transactions or attempted money-laundering transactions.

3 | ### IX.    CLAIM FOR RELIEF

4 | 99.    As required by Supplemental Rule G(2)(f), the facts set forth in this

5 | Verified Complaint support a reasonable belief that the United States will be able to meet

6 | its burden of proof at trial. More specifically, there is probable cause to believe that the

7 | Defendant Property is forfeitable pursuant to 18 U.S.C. § 981(a)(1)(C) because it

8 | constitutes or derives from proceeds traceable to one or more wire-fraud offenses, in

9 | violation of 18 U.S.C. § 1343; and pursuant to 18 U.S.C. § 981(a)(1)(A) because it

10 | constitutes property involved in, or traceable to property involved in, one or more money-

11 | laundering transactions or attempted money-laundering transactions in violation of

12 | 18 U.S.C. §§ 1956(a)(1)(B)(i), 1956(h), and 1957.

13 |

14 | ///

15 |

16 | ///

17 |

18 | ///

Verified Complaint for Forfeiture *in Rem* - 18
*United States v. 10801 NW 43rd St., et al.*

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

WHEREFORE, the United States respectfully requests:

A.    Due notice be given to all interested parties to appear and show cause why the Defendant Property should not be forfeited;

B.    Judgment be entered declaring the Defendant Property and any interest to be condemned and forfeited to the United States for disposition according to law; and,

C.    The United States be granted such other and further relief as this Court may deem just and proper.

DATED this 15th day of November, 2024.

Respectfully submitted,

TESSA M. GORMAN
United States Attorney

JEHIEL I. BAER
Assistant United States Attorney
United States Attorney's Office
700 Stewart Street, Suite 5220
Seattle, Washington 98101
Phone: (206) 553-2242
Jehiel.Baer@usdoj.gov

Verified Complaint for Forfeiture *in Rem* - 19
*United States v. 10801 NW 43rd St., et al.*

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

## <u>VERIFICATION</u>

I, Catherine Allaway, being first duly sworn, upon oath, depose and state the following:

I am a Special Agent (SA) with the U.S. Department of Justice, Federal Bureau of Investigation (FBI), and I have been so employed since May of 2019. I am currently assigned to FBI Seattle Division's Vancouver Resident Agency.

At the start of my employment, I completed the 21-week FBI Academy and was trained in investigative techniques, procedures, and strategies. Until December of 2023, I was assigned to the San Diego Division's Major Mexican Traffickers Task Force (MMTTF). The MMTTF investigates crimes committed by Transnational Criminal Organizations (TCOs), Drug Trafficking Organizations (DTOs), and Money Laundering Organizations (MLOs). During my time assigned to the MMTTF, I have attended numerous trainings tailored to agents and officers working narcotics and money laundering-related investigations. Some of these trainings have been hosted by the California Narcotics Officers Association (CNOA), the Money Laundering and Asset Recovery Section (MLARS), and the International Narcotics Interdiction Association (INIA). Additionally, I have been deeply involved in several investigations targeting these types of organized criminal groups. In my current assignment, I continue to investigate TCOs, as well as other criminal violations, including complex financial crimes and fraud.

I have reviewed and confirmed the investigative facts contained in the foregoing Verified Complaint for Forfeiture *In Rem*. The investigative facts are based on personal knowledge I obtained from my involvement in the underlying investigation, my review of the relevant investigative material, other federal agencies and law enforcement officers involved in the investigation, other reliable official Government sources, and my own training and experience.

Verified Complaint for Forfeiture *in Rem* - 20
*United States v. 10801 NW 43rd St., et al.*

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1        I hereby verify and declare, under penalty of perjury pursuant to 28 U.S.C. § 1746,

2    that I have read the foregoing Verified Complaint for Forfeiture *In Rem*, that I know its

3    contents, and that the facts it contains are true and correct to the best of my knowledge.

4

5        Executed this __14th__ day of November, 2024.

6

7

8                                       _____

9                                     CATHERINE ALLAWAY

10                                   Special Agent

                                   Federal Bureau of Investigation

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27